**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MILKO V. MATEO,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>FIRST TRANSIT INC.,<br><br>　　　　　　　Defendant. | Civil Action No. 19-17302<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Presently before the Court is a Motion by Defendant First Transit Inc. ("Defendant") to dismiss the Amended Complaint of *pro se* Plaintiff Milko Mateo ("Plaintiff"), wherein he alleges that Defendant, his former employer, retaliated against him for making safety complaints, gave a fraudulent disciplinary warning, created a hostile work environment, and unlawfully terminated his employment in violation of 8 U.S.C. § 1324c, the Conscientious Employee Protection Act ("CEPA"), and the New Jersey Law Against Discrimination ("LAD"). In addition, Plaintiff asserts a fraud claim and a *Pierce* public policy claim. For the reasons that follow, Defendant's Motion to dismiss is **GRANTED** on all counts. Plaintiff's 8 U.S.C. § 1324c and CEPA claims are dismissed with prejudice; however, Plaintiff's *Pierce*, LAD, and common law fraud claims are dismissed without prejudice. Plaintiff is given leave to file a second amended complaint to cure the deficiencies outlined herein within 30 days of the date of this Opinion.

**I.　　FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following factual allegations are taken from Plaintiff's Amended Complaint and are accepted as true for the purpose of this Motion. On August 20, 2015, Plaintiff began working as

1

a bus driver at Defendant's facility in North Brunswick, New Jersey, which provides bus services for the Rutgers University campuses. Amended Complaint ("Compl.") at 6. *Id*. Plaintiff alleges that, on February 15, 2016, his bus did not have a functioning defroster, which caused his windshield to fog. *Id*. at 4. Due to this condition, Plaintiff alleges that he was required to drive with one hand while wiping the windshield clear with his other hand. *Id*. Plaintiff further alleges that he called his Operations Supervisor Hale Kim on two occasions, to inform him that he could not see, but Mr. Kim told Plaintiff to continue on his route. *Id*. Plaintiff allegedly refused to continue driving, pulled over, and told the passengers on board that he was putting the bus out of service for safety reasons. *Id*. According to Plaintiff, he called "[E]thics [P]oint" later that night to make a safety complaint. *Id*.

Safety & Security Manager Daniel Kelly issued Plaintiff a warning for insubordination, allegedly in retaliation for the safety complaint that Plaintiff made. *Id*. at 5. Plaintiff also alleges that Operations Manager Jose Vega began retaliating against Plaintiff, created a hostile work environment, and allegedly denied Plaintiff the opportunity to take extra open shifts on February 23, March 2, and April 8, 2016. *Id*. On March 6, 2016, Plaintiff, again, called Ethics Point and lodged a complaint regarding drivers allegedly operating buses with defective headlights at night. *Id*.

On October 24, 2016, Plaintiff received a written warning from Safety Supervisor George Oshiapem (the "Warning"). *Id*. A copy of the Warning, which is attached as an exhibit to the Amended Complaint, states that bus operators are required to perform inspections at the end of each trip. *Id*., Ex. 2. The Warning further states that a bus Plaintiff had driven was found with a "completely shredded" bus tire, and that Plaintiff should have noticed this "serious safety issue" during a post-trip inspection. *Id*. Photographs of the shredded bus tire are included in the

Warning. *Id*. Plaintiff told Mr. Oshiapem that the incident "didn't happen," and he refused to sign the Warning. *Id*. at 5. Plaintiff again made an ethics complaint, alleging that Defendant had retaliated against him by producing a "fraudulent document." *Id*. at 5-6. Later, on November 1, 2016 and January 8, 2017, Plaintiff appealed the issuance of the Warning to Mr. Kelly and his union chairman, Mr. Wayne. *Id*. at 6. In his appeal, Plaintiff maintained that the tire could not have been shredded because he did not notice a tire pressure warning light during his shift. *Id*.

On January 12, 2017, Plaintiff called Ethics Point again to complain about another alleged safety issue. *Id*. According to Plaintiff, after he refused to drive a different bus with a visibly slashed tire, Mr. Oshiapem drove the bus across campus. *Id*. In June 2017, Plaintiff allegedly met with union chairman, Mr. Wayne, and Defendant's management to discuss the October 24, 2016 Warning. *Id*. at 7. During that meeting, Mr. Wayne allegedly told Plaintiff to "walk away" from the appeal, and Plaintiff alleges that he was never informed about the outcome of his meeting "in regards to the fraudulent document." *Id*.

In addition, Plaintiff alleges that he had an annual "turning and maneuvering" evaluation with Mr. Oshiapem in June 2017, where employees were required to drive through an obstacle course in the parking lot. *Id*. Instead of evaluating Plaintiff like every other employee, Mr. Oshiapem allegedly directed Plaintiff "to drive on the parkway and return to the [F]irst [T]ransit lot." *Id*. Plaintiff alleges that Mr. Oshiapem falsely recorded that Plaintiff had completed the evaluation. *Id*.

In August 2017, Plaintiff allegedly discovered that Defendant was retaliating against him by not providing Plaintiff with a route or schedule for the upcoming university semester. *Id*. Plaintiff asserts that he spoke with Human Resources Manager Brad Bryers and told Mr. Bryers that the Warning would be "influential to any determination regarding his present and future

3

employment." *Id*. In September 2017, Mr. Bryers allegedly asked Plaintiff why he was not working and warned him that he would be fired. *Id*. Plaintiff allegedly responded that he was still waiting to be called for an appointment to choose a route and schedule for the college semester. *Id*. Finally, Defendant allegedly terminated Plaintiff's employment on September 5, 2017. *Id*. at 1.

On August 28, 2018, Plaintiff filed the instant action against Defendant. On December 17, 2019, Plaintiff filed an Amended Complaint, asserting 8 U.S.C. § 1324c, CEPA, *Pierce*, LAD, and common law fraud claims. On February 6, 2020, Defendant moved to dismiss Plaintiff's Amended Complaint, arguing that the pleadings do not conform to Rule 10(b)'s formal pleading requirements. Defendant also argues that the Amended Complaint fails to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). Plaintiff opposes the Motion to dismiss.[1]

## II.     STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted). While Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's

---

[1]     In addition to his opposition brief, Plaintiff filed a document (ECF No. 26) on June 9, 2020, which appears to contain new factual allegations in support of his causes of action. However, as a threshold issue, Plaintiff did not seek leave from the Court to amend his pleading pursuant to Fed. R. Civ. P. 15(a)(2), and therefore, the Court can strike Plaintiff's second amended complaint on such grounds. Nevertheless, the Court has reviewed this additional filing and finds that the new allegations that Plaintiff raises therein do not change the outcome of this Motion.

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a plaintiff has met the facial plausibility standard mandated by *Twombly* and *Iqbal*, courts within this Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "outline the elements a plaintiff must plead to state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the Court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of trust. *Id.* Finally, where "there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Here, Plaintiff is proceeding *pro se*. "The obligation to liberally construe a *pro se* litigant's pleadings is well-established." *Higgs v. AG of the United States*, 655 F.3d 333, 339 (3d Cir. 2011); *see also Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). "Courts are to construe complaints so as to do substantial justice, keeping in mind that *pro se* complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir.

2004) (internal quotation marks and citation omitted). "Liberal construction does not, however, require the Court to credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). "[T]here are limits to [the court's] procedural flexibility. . . . [P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245, 58 V.I. 691 (3d Cir. 2013). "Even a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282.

## III. ANALYSIS

At the outset, the Court notes that, although the Amended Complaint contains a total of Seven Counts, Plaintiff asserts no more than 5 causes of action against Defendant, including violations of (1) 8 U.S.C. § 1324c and (2) CEPA, in addition to (3) *Pierce* public policy, (4) LAD, and (5) common law fraud claims. The Court proceeds to address each of Plaintiff's claims in turn.[2]

---

[2] As a threshold issue, Defendant argues that the Amended Complaint must be dismissed because it does not adhere to Fed. R. Civ. P. 10(b)'s formal pleading requirements, providing that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Here, while the Amended Complaint does not strictly adhere to the requirements of Rule 10(b), the Court finds that Plaintiff's pleadings are not so unintelligible, such that Defendant is precluded from filing a responsive pleading. Indeed, at only eight pages long, the Amended Complaint does not make referencing an allegation unduly burdensome. In addition, Plaintiff has divided the factual allegations in the Amended Complaint into separate paragraphs that generally relate to different sets of circumstances. As such, the Amended Complaint provides Defendant with adequate notice of Plaintiff's causes of action, and, considering Plaintiff's *pro se* status, the Court will not dismiss the Amended Complaint based on the failure to adhere to Rule 10(b). *See Coleman v. Camacho*, No. 10-2613, 2012 U.S. Dist. LEXIS 168443, at *7 (D.N.J. Nov. 27, 2012) (providing that the decision to dismiss a complaint based on the failure to adhere to Rule 10(b) falls within the discretion of the court).

### A.  8 U.S.C. § 1324c Document Fraud Claim

In Count 2 of the Amended Complaint, Plaintiff asserts a claim for document fraud pursuant to 8 U.S.C. § 1324c. Compl. at 3. However, as a threshold issue, the Court notes that Plaintiff does not dispute the dismissal of his cause of action under 8 U.S.C. § 1324c, and thus, it appears that Plaintiff has abandoned this claim. *See Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003), *aff'd*, 136 F. App'x 551 (3d Cir. 2005) ("Plaintiff makes no response to [the defendant's] argument, and thus has waived his opportunity to contest it."); *Powell v. Verizon*, No. 19-8418, 2019 U.S. Dist. LEXIS 161552, at *22 (D.N.J. Sept. 20, 2019) ("A plaintiff concedes a claim when she fails to oppose arguments in support of a motion to dismiss. . . ."); *Person v. Teamsters Local Union 863*, No. 12-2293, 2013 U.S. Dist. LEXIS 149252, at *5 (D.N.J. Oct. 17, 2013) ("Failure to raise legal arguments in opposition to a motion to dismiss results in waiver.").

Nevertheless, to the extent that Plaintiff intends to pursue this claim, it fails for multiple reasons. First 8 U.S.C. § 1324c, a section of the Immigration and Nationality Act, prohibits creating, possessing, or using fraudulent immigration documents; the provisions of this statute are plainly inapplicable to Plaintiff's allegations. In addition, 8 U.S.C. § 1324c does not provide a litigant with a private cause of action. *See Harris v. United States Postal Serv.*, No. 16-6474, 2019 U.S. Dist. LEXIS 118366, at *13 n.10 (D.N.J. July 12, 2019) ("8 U.S.C. § 1324c does not create a private right of action.") (citing *United States v. Richard Dattner Architects*, 972 F. Supp. 738, 743-44 (S.D.N.Y. 1997)). Thus, Plaintiff's 8 U.S.C. § 1324c claim is dismissed with prejudice.

### B.  **Conscientious Employee Protection Act Claim**

In Count 3 of the Amended Complaint, Plaintiff cites to *Estate of Roach v. Trw, Inc.*, 164 N.J. 598 (2000), a case which sets forth the burden of proof for a CEPA claim. Compl. at 3. As such, although Plaintiff does not explicitly assert a CEPA cause of action, under a liberal reading of the Amended Complaint, the Court will construe Count 3 to assert such a claim.[3] CEPA was implemented "to protect employees who report illegal or unethical work-place activities[,]" *Barratt v. Cushman & Wakefield*, 144 N.J. 120, 127 (1996), and the statute requires a former employee to institute a civil action within one year of a CEPA violation. N.J.S.A. 34:19-5. Here, based on Plaintiff's allegations, as pled, he was terminated on September 5, 2017. Compl. at 1. Thus, at the latest, the statute of limitations expired on September 5, 2018. However, because Plaintiff did not file his first complaint until 11 months later, on August 28, 2019, his CEPA claim is time-barred under the statute. Therefore, the Court dismisses Plaintiff's CEPA claim with prejudice.

    **C.**    ***Pierce* Public Policy Claim**

Count 1 of the Amended Complaint cites to *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 72 (1980), which creates a wrongful discharge cause of action for employees who oppose public policy violations. Compl. at 2. Moreover, in Count 6 of the pleadings, Plaintiff cites to *Velantzas v. Colgate-Palmolive Co.*, 109 N.J. 189 (1988), which discusses the burden of proof for the same cause of action. Compl. at 4. Thus, the Court construes Counts 1 and 6 as asserting a single claim under *Pierce*.

Defendant moves to dismiss Plaintiff's *Pierce* claim, on the basis that the Amended Complaint does not allege a violation of a clear public policy mandate. Def. Br. at 10. Defendant

---

[3] Plaintiff does not oppose the dismissal of his CEPA claim in his opposition papers, and thus, as explained *supra*, his cause of action under the statute can be dismissed on this basis, alone.

8

also argues that Plaintiff's *Pierce* claim cannot stand, because the pleadings do not allege that Plaintiff's termination was caused as a result of his opposition to a public policy violation. *Id*. at 11. Conversely, Plaintiff argues that he has, in fact, identified a clear public policy violation "regarding the safety and welfare of the general public," and that he has pled such a violation based on the following allegations: (a) Mr. Mateo told Plaintiff to drive a bus in unsafe conditions; (b) that Mr. Oshiapem drove a bus with a slashed tire on January 12, 2017; and (c) that Defendant fabricated a Warning against Plaintiff. Pl. Br. at 7. In addition, according to Plaintiff, Mr. Oshiapem committed a "Federal Motor Carrier DOT regulation violation" because he falsified Plaintiff's 2017 performance evaluation. *Id*. The Court finds Plaintiff's position without merit.

*Pierce* establishes a common law cause of action for wrongful discharge when an employee refuses "to perform an act that is a violation of a clear mandate of public policy." *Pierce,* 84 N.J. at 72. "The sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions," and, "[i]n certain instances, a professional code of ethics. . . ." *Id*. "A basic requirement" of stating a *Pierce* claim "is that the mandate of public policy be clearly identified and firmly grounded." *Macdougall v. Weichert*, 144 N.J. 380, 391 (1996). Indeed, "[a] vague, controversial, unsettled, and otherwise problematic public policy does not constitute a clear mandate. Its alleged violation will not sustain a wrongful discharge cause of action." *Id*. at 392; *see also Thomas v. Princeton Univ.*, No. A-0744-12T22013, 2013 N.J. Super. Unpub. LEXIS 1446, at *13 (App. Div. June 14, 2013) (finding that "vague references to 'internal mistakes, bad decisions, and conflicts of interests' do not adequately implicate any clear mandate of public policy"). Furthermore, it is axiomatic that an employer's violation of a public policy "must pose a threat of *public harm*, not merely private harm or harm

9

only to the aggrieved employee." *Mehlman v. Mobil Oil Corp.*, 153 N.J. 163, 188 (1998) (emphasis added).

Here, as a threshold issue, Plaintiff has not identified a clear public policy mandate, such as a statute, administrative rule, or a judicial decision. Instead, to meet this requirement, the Amended Complaint references a "fraudulent" Warning that Plaintiff received on October 24, 2016, an alleged fraudulent performance evaluation that Mr. Oshiapem conducted in June 2017, and Mr. Mateo's alleged verbal instructions to drive a bus in unsafe conditions—examples that are insufficient to establish a clear public policy mandate. The fraudulent Warning that Plaintiff received caused a private harm to Plaintiff, not the general public, and thus, it cannot serve as the basis for his *Pierce* claim. In a similar vein, Mr. Oshiapem's alleged fraudulent evaluation of Plaintiff's work performance neither concerns nor poses a threat to the public; rather, at most, it constitutes another mere personal harm to Plaintiff. What is more, the Amended Complaint does not identify a recognized public policy source under *Pierce*, albeit one may exist, which prohibits driving a bus with a broken defogger or a slashed tire. Instead, nowhere in the Amended Complaint does Plaintiff allege that Defendant violated a law or a regulation, as Plaintiff instead makes a vague reference to a "Federal Motor Carrier DOT regulation violation," without setting forth a specific one. (Pl. Br. at 7.) Therefore, because the Court finds that the Amended Complaint does not set forth a clear public policy mandate, Plaintiff's cause of action under *Pierce* fails on these grounds, alone.

In addition to these deficiencies, Plaintiff's *Pierce* claim fails because the Amended Complaint does not allege that he was terminated for complaining about such a violation. In that regard, "*Pierce* requires the employee to prove not only that he or she complained about a public policy, but that his or her resulting discharge violated a clear mandate of public policy."

10

*Tartarglia v. UBS PaineWebber, Inc.*, 197 N.J. 81, 112 (2008). Accordingly, to state a viable claim under *Pierce*, a plaintiff must "'show that he was in fact discharged in retaliation for taking action in opposition to corporate action which violates a clear mandate of public policy.'" *Badrinauth v. MetLife Corp.*, 368 F. App'x 320, 324 (3d Cir. 2010) (quoting *House v. Carter-Wallace, Inc.*, 232 N.J. Super. 42, 54 (App. Div. 1989)). For instance, in *Badrinauth*, a four-month gap between an employee's threatened complaint and his discharge was an indication that a causal connection did not exist between the two events. *Id*; *see also Freeman v. Middle Twp. Bd. of Educ.*, No. 10-6024, 2012 U.S. Dist. LEXIS 121195, at *24 (D.N.J. Aug. 27, 2012) (dismissing a *Pierce* cause of action because the plaintiff "failed to present any evidence of a causal connection" between her expression of disagreement with a workplace policy and the ultimate termination of her employment).

Here, while the Amended Complaint pleads that Plaintiff made multiple ethics complaints during the course of his work, he fails to allege that he was terminated in retaliation for these actions. In particular, on February 15, 2016, Plaintiff claims that he first complained to "[E]thics [P]oint" about being ordered to drive a bus with a broken defroster. Compl. at 4. On March 6, 2016, Plaintiff alleges that he lodged another complaint regarding buses being driven at night with defective headlights. *Id*. at 5. On October 24, 2016, Plaintiff asserts that he again called Ethics Point to complain about the allegedly fraudulent Warning which he received. *Id*. On January 12, 2017, Plaintiff asserts that he submitted a safety complaint concerning Mr. Oshiapem, who allegedly drove a bus with a slashed rear tire. *Id*. And, finally, in June 2017, Plaintiff alleges that he met with Mr. Wayne and Defendant's management to discuss his Warning, but, according to Plaintiff, he was not informed about the outcome of that meeting. *Id*. at 7.

Nevertheless, Plaintiff has failed to assert a "casual connection" between his complaints and his termination. Indeed, although Plaintiff alleges that he was not provided with a busing route or schedule in the fall of 2017, he fails to assert that Defendant refrained from assigning him work, because of the above-referenced complaints. Indeed, no factual allegations are contained in the Amended Complaint to link Plaintiff's lack of work or termination to the various alleged complaints that he raised. Rather, in the Amended Complaint, Plaintiff pleads that he met with Human Resources Manager Brad Bryers in May 2017, and stated that the issued Warning would be "influential" to "his present and future employment[,] and that the document was fraudulent." *Id*. However, with nothing more, Plaintiff's vague explanation of a conversation that he had with Mr. Bryers cannot establish a causal relationship between Plaintiff's complaints and his termination. In addition to these deficiencies, there is a lack of temporal proximity between the Warning that Plaintiff received, and his ultimate termination. In that connection, Plaintiff alleges that he received the Warning on October 24, 2016, and that he was not discharged from his work until September 5, 2017, a period of more than ten months, which is longer than the four-month gap deemed to be significant in *Badrinauth*, 368 F. App'x at 324. Thus, the Amended Complaint does not allow for a plausible inference that Plaintiff's complaints and his termination are, in fact, related. Plaintiff's *Peirce* cause of action is dismissed without prejudice.

        **D.**    **New Jersey Law Against Discrimination Claim**

In Count 7 of the Amended Complaint, Plaintiff asserts a cause of action for hostile work environment under the LAD. Compl. at 4. In seeking dismissal, Defendant argues that Plaintiff has not stated a viable LAD claim, because the Amended Complaint does not allege that Plaintiff belongs to a protected class or that he has a protected trait. (Def. Br. at 13.) Defendant further

12

argues that the Amended Complaint does not allege a link between a hostile work environment and Plaintiff's protected status. *Id.* In his opposition brief, Plaintiff, for the first time, contends that he is a "conservative homosexual," and that he filed a complaint with the Equal Employment Opportunity Commission in 2016, after another employee made advances towards him. Pl. Br. at 2. In response to this grievance, Plaintiff contends that Defendant retaliated against him. *Id*. at 2-3.

"To establish a cause of action under the LAD based on a hostile work environment, [a plaintiff] must satisfy each part of a four-part test. Specifically, [a plaintiff] must show that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." *Shepherd v. Hunterdon Developmental Ctr.*, 174 N.J. 1, 24 (2002). For instance, in *Rossi v. Vericare Mgmt.*, No. 13-6884, 2016 U.S. Dist. LEXIS 161750, at *2 (D.N.J. Nov. 22, 2016), a plaintiff employee asserted a LAD claim for hostile work environment based on his advanced age. Specifically, the employee claimed that his employer minimized his involvement in the business, put pressure on him to engage in fraudulent conduct, and denied him a performance bonus. *Id*. at *4-5. However, the plaintiff's hostile work environment LAD claim was dismissed, because he had "provided no link between the complained of conduct and his age. . . ." *Id*. at *24. Rather, the plaintiff had pled that the company's hostile conduct followed from his complaints to upper management about the company's fraudulent practices. *Id*. Even though the plaintiff had a protected trait, he had not stated a LAD hostile work environment claim because his complaints, not his age, was the alleged trigger for the employer's retaliation. *Id*.

Here, the Amended Complaint does not state a LAD hostile work environment claim, because it contains no mention of a protected status. Indeed, although sexual orientation is a protected status under the LAD, N.J.S.A. 10:5-12, and Plaintiff states that he is a "conservative homosexual," such allegations are not included in his Amended Complaint. Rather, Plaintiff raises these contentions, for the first time, in his opposition brief. Pl. Br. At 2. However, because "it is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss[,]'" Plaintiff's reference to his sexual orientation in his brief cannot save his LAD claim. *Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) (quoting *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)); *Tice v. Winslow Twp. Police*, No. 13-6894, 2014 U.S. Dist. LEXIS 94147, at *6 (D.N.J. July 11, 2014) ("A plaintiff, even one proceeding *pro se*, cannot amend his pleading through a brief in opposition to dismissal.") (citation omitted). Nonetheless, even if Plaintiff had pled his sexual orientation in the Amended Complaint, his LAD claim would still fail, because the Amended Complaint includes no factual allegations that connect Plaintiff's sexual orientation to Defendant's alleged hostile actions. Instead, like the plaintiff in *Rossi*, Plaintiff asserts that Defendant created a hostile work environment in response to his ethics complaints, rather than his alleged protected status. (Pl. Br. at 5.) Thus, the Amended Complaint does not assert a viable LAD cause of action, and that claim is dismissed without prejudice.

### E.   Common Law Fraud Claim

In Counts 4 and 5 of the Amended Complaint, Plaintiff cites to *Jewish Ctr. of Sussex Cty. v. Whale*, 86 N.J. 619, 626 (1981), *Amel v. Crewick*, 71 N.J. Super. 213, 218 (App. Div. 1961) and *Schmidt v. Schmidt*, 220 N.J. Super. 46, 50 (Ch. Div. 1987). Because these cases all discuss

the burden of proof for common law fraud, the Court will construe Counts 4 and 5 of the Amended Complaint to assert such a claim.

In moving for dismissal, Defendant argues that the Amended Complaint does not meet the heightened pleading requirements under Fed. R. Civ. P. 9(b), which are applicable to allegations of fraud. (Def. Br. at 15.) In response, Plaintiff contends that he has alleged a viable fraud claim, because he received a Warning from Defendant on October 24, 2016 for driving a bus with a shredded tire. Moreover, according to Plaintiff, the Warning included a picture of the shredded tire that Defendant claims he never noticed. Plaintiff argues that the picture of the shredded tire attached to the Warning is fraudulent, because the tire pressure monitoring system on Plaintiff's bus would have alerted him if a tire had been flat, but he never received such a notification. Pl. Br. at 5.

Federal Rule of Civil Procedure 9(b) specifies that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "Rule 9(b)'s heightened pleading standard gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). To state a common law fraud claim in New Jersey, a plaintiff must plead facts in support of the following elements: "'(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005) (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)).  In *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 527-28 (D.N.J. 2008), car owners asserted common law fraud claims against Volkswagen,

alleging that certain statements on the car manufacturer's website and in owner's manuals constituted false representations. However, the plaintiffs' common law fraud claims were dismissed, irrespective of the veracity of the statements, because the plaintiffs had not pled that they ever relied on the representations. *Id*; *see also Hoffman v. Liquid Health, Inc.*, No. 14-01838, 2014 U.S. Dist. LEXIS 90075, at *30-31 (D.N.J. July 2, 2014) (dismissing a common law fraud claim where the plaintiff had not pled that he reasonably relied on an advertisement before using a product).

Here, the Amended Complaint does not allege a cognizable claim for common law fraud, because Plaintiff has not pled facts to support the third, fourth, and fifth elements. Indeed, the Amended Complaint does not assert that Defendant included the alleged fraudulent photograph of the shredded tire in the Warning, with the intention that Plaintiff would rely on that photograph. Nor does Plaintiff allege that his reliance on the picture was reasonable. In fact, in the Amended Complaint, Plaintiff expressly alleges that he did not rely on the alleged fraudulent document, *i.e.*, the picture of the shredded tire, and that he did not sign the Warning, but instead complained to Mr. Oshiapem that the damage to the tire never occurred. Compl. at 5. In addition to these pleading deficiencies, Plaintiff has not pled that he suffered damages as a result of the alleged fraud. Rather, Plaintiff cites to *Jewish Ctr. of Sussex Cty.*, 86 N.J. at 626, for the proposition that "[a]ctual loss in the financial sense is not required before equity may act," but his reliance on this case is misplaced. Indeed, that decision discussed granting equitable remedies when a benefit is unjustly conferred on a defendant, which Plaintiff has not alleged in the Amended Complaint. Thus, based on these reasons, Plaintiff's cause of action for common law fraud is also dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to dismiss the Amended Complaint is **GRANTED**. Plaintiff's 8 U.S.C. § 1324c and CEPA claims are dismissed with prejudice. However, Plaintiff's *Pierce*, LAD, and common law fraud claims are dismissed without prejudice. Plaintiff is granted leave to file a second amended complaint that includes factual allegations supporting his *Pierce*, LAD, and common law fraud causes of action within 30 days from the date of this Opinion.

DATED: July 16, 2020

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge